**The PEOPLE of the State of Colorado, Petitioner,**

v.

**The DISTRICT COURT OF COLORADO'S SEVENTEENTH JUDICIAL DISTRICT and One of its Judges, the Honorable Philip F. Roan, Respondents.**

No. 89SA100.

Supreme Court of Colorado, En Banc.

Sept. 18, 1989.

James F. Smith, Dist. Atty., and Steven L. Bernard, Chief Trial Deputy, Brighton, for petitioner.

Springer and Steinberg, P.C., Jeffrey A. Springer, Denver, for respondents.

Justice ROVIRA delivered the Opinion of the Court.

In this original proceeding, we issued a rule to show cause why the respondent Adams County District Court's order dismissing an information charging the defendant, James R. Hulsing, with the first-degree murder of his wife, Elaine Hulsing, should not be vacated. The district court dismissed the information at the conclusion of the preliminary hearing because it determined that the prosecution had not established probable cause to believe that the defendant committed the crime of first-degree murder. The court ordered the case bound over on the charge of second-degree murder. We disagree with the order of dismissal, and make the rule absolute.

I.

On January 5, 1989, the defendant was charged by information with first-degree murder after deliberation, in violation of section 18–3–102(1)(a), 8B C.R.S. (1986).[1] A preliminary hearing was held on February 3, 1989.

The People presented five witnesses at the hearing. The evidence established that around 10:15 p.m. on December 31, 1988, police officers were called to a Thornton address on a report of a shooting. When they arrived at the residence, the door was open and they entered the house. Officer David LaRose heard a voice say, "Help me. In here." When he entered the bedroom, LaRose saw the defendant leaning over his wife's body. The defendant said, "Oh my God. I shot her. I killed her." The defendant appeared to have been giving mouth-to-mouth resuscitation to his wife.

The defendant was taken to the living room. He was crying, and said, "I'm sor-

ry. I tried to breathe life back into her. I didn't mean to do it. Please don't let her be dead."

A search of the defendant's home revealed that the front door appeared to have been kicked in. The door jamb was broken and there was a footprint in the dust on the outside of the door. There were signs of a struggle in the living room. Next to the door, police found two duffel bags packed with men's clothing, and additional men's clothing on a chair. One of the duffel bags contained a holster for a revolver and several .22 caliber long rifle rounds. In the hallway, police found a telephone lying on the floor, with the receiver off the hook and the telephone cord severed.

The victim was found in the bedroom of the Hulsings' 2½-year-old daughter, Courtney. There, a single-action .22 caliber revolver was located on the top of a dresser. The revolver was in a cocked position and there were five live rounds and one spent round in the chamber. The safety was in the off position. The revolver was later determined to be safe and functional, with a trigger pull of between 3 and 3½ pounds.

A blood alcohol test was performed on the defendant at a local hospital. The first sample was taken at 11:40 p.m. and the second sample at 12:30 a.m. on January 1, 1989. The alcohol content in the first sample was .230 and in the second sample was .213. After the blood alcohol test was performed, the defendant was taken to the police station.

Shortly after the police arrived at the defendant's home, Detective Glen Trainor interviewed defendant's 7–year–old son, Brandon. Brandon told Trainor that his father had left the house before lunch to buy some kerosene. He said that his father called home several times during the day and appeared to be fighting with his mother on the telephone. Brandon said that later in the evening his father called while his mother was taking a bath and

---

1. A person commits the crime of murder in the first degree if:

    (a) After deliberation and with the intent to cause the death of a person other than him-

self, he causes the death of that person or of another person.

demanded to speak with her. When informed by Brandon that she was in the bathtub, the defendant hung up. A few minutes later, the defendant called back and demanded that Brandon's mother come to the telephone. When Brandon again told him she was in the bathtub, his father swore at him so he hung up the telephone.

Approximately 15 minutes later, when Brandon was in the bathtub, he heard his father arrive home. A few minutes after his mother let defendant into the house, she told Brandon to get out of the bathtub and get dressed because they were going to the police.

Brandon saw his mother go into his sister's bedroom and saw his father follow her, carrying a gun in his right hand. He saw his father cocking the revolver. Peering into the room, he saw his father put the barrel of the revolver down his mother's pants and heard his mother say, "Go ahead and shoot me." Brandon told the police officer, "That's what mom always says when dad points a gun at her." Brandon also said that he heard his father say, "I could never shoot you," and saw him uncock the revolver and pull it out of the victim's pants.

At this time, Brandon went to his bedroom. He then heard a loud "pop" and a noise which he thought was a body falling on the floor. He went to his sister's bedroom and saw his mother lying on the floor. His father was standing over her and said, "Brandon, I'm sorry I shot your mom. The gun just went off. Go get help." The defendant also told Brandon that the gun went off when he was letting the hammer down or uncocking it.

Officer Robin Garrett testified about her conversation with the defendant's 2½-year-old daughter. The child was very excited and when asked what happened, she said, "Daddy and mommy were yelling and daddy made mommy cry." She also stated, "daddy put the gun in mommy's pants and daddy pointed the gun at mommy's nose. Daddy made the gun go bang and gave mommy a big owie."

Trainor also testified about his questioning of the defendant on January 2, 1989.

After being advised of his *Miranda* rights, the defendant agreed to talk to Trainor. Defendant initially told the officer that the gun went off accidently while he was unloading it. Subsequently, he told Trainor that after running some errands, he spent the afternoon drinking with some friends. When he arrived home, his wife was angry. She told him to go to his car and get her checkbook and then to take his clothes, which she had placed by the front door, and leave. The defendant got the checkbook and his .22 caliber revolver and returned to the house. He then followed his wife into Courtney's bedroom and they argued about several matters, including when he would get a job. He said that he did not remember cocking the revolver, but did remember pointing the revolver at the wall next to where his wife was removing some items from the dresser. During this time, the victim was comparing defendant to her former boyfriend. According to the defendant, his wife turned and bumped the revolver with her hand, causing the gun to go off.

In response to Trainor's question whether the defendant could have pointed the gun at his wife, the defendant said, "Yeah, I guess I did." In response to the question of whether he could have been pointing the gun at her head when it went off, the defendant said, "I guess I was but I don't remember."

Dr. Donald Clark, a forensic pathologist, testified that Elaine Hulsing died as a result of a contact-type small caliber gunshot wound with the entrance into the back of the head and the bullet lodging in the front of her head.

At the conclusion of the evidence, the trial court ruled: "The Court cannot find sufficient evidence of deliberation to bind it over on first-degree murder. The Court finds very clearly that this is a second-degree murder case and the Court will bind it over as to murder in the second degree."

Subsequently, in a written order, the court concluded that:

1. The central issue in the preliminary hearing is whether or not there was

deliberation by the Defendant before the Victim was shot.

2. There is no evidence, considering all permissible inferences in the light most favorable to the people, that the Defendant ever formed the intent to kill his wife. This intent must be shown by some evidence to sustain a charge of First Degree Murder.

## II.

▉ The only issue we are called upon to resolve is whether the trial court abused its discretion in failing to find probable cause on the charge of first-degree murder. Well established principles guide our review of the trial court's order. A preliminary hearing is a screening device used to determine whether probable cause exists to support charges that an accused person committed a particular crime. To meet the standard of probable cause, there must be evidence sufficient to induce a person of ordinary prudence and caution to form a reasonable belief that the defendant committed the crime charged. *People v. Stewart,* 739 P.2d 854 (Colo.1987). The evidence must be viewed in the light most favorable to the prosecution, and all inferences must be resolved in favor of the prosecution. *People v. Pedrie,* 727 P.2d 859 (Colo.1986). The prosecution is not required to present evidence sufficient to support a conviction. *People v. Williams,* 628 P.2d 1011 (Colo.1981). Intent to commit the offense may be inferred from the defendant's conduct and the circumstances of the case. *Miller v. District Court,* 641 P.2d 966 (Colo.1982).

▉ First-degree murder is a specific intent crime. The prosecution must establish not only that the defendant intended to cause the death of another person, but that he acted after deliberation. § 18–3–102(1)(a), 8B C.R.S. (1986).

A person acts "intentionally" or "with intent" when his conscious objective is to cause the specific result proscribed by the statute defining the offense. § 18–1–501(5), 8B C.R.S. (1986). The term "after deliberation" means "not only intentionally but also that the decision to commit the act has been made after the exercise of reflection and judgment concerning the act. An act committed after deliberation is never one which has been committed in a hasty or impulsive manner." § 18–3–101(3), 8B C.R.S. (1986). *See People v. Bartowsheski,* 661 P.2d 235, 242 (Colo.1983) ("[W]hile deliberation requires that a design to kill precede the killing, the length of time required for deliberation need not be long.... What is required for the element of deliberation is that the decision to kill be made after the exercise of reflection and judgment concerning the act.").

The critical inquiry in this case is whether the evidence, when viewed in the light most favorable to the prosecution, is sufficient to induce a person of ordinary prudence and caution to a reasonable belief that the defendant acted intentionally, after the exercise of reflection and judgment.

▉ The element of deliberation, like intent, can rarely be proven other than through circumstantial or indirect evidence. *People v. Madson,* 638 P.2d 18 (Colo.1981). Such evidence may include the use of a deadly weapon, the manner in which it was used, and the existence of hostility or jealousy between the accused and the victim. *Id.* at 26. The uncontradicted testimony at the preliminary hearing established that the defendant argued with his wife, threatened to kill her, was compared to a former boyfriend, was told to leave the house, disabled the telephone, pointed a loaded gun at his wife at least three times, and fired the gun at close range into the back of his wife's skull.

▉ The evidence regarding defendant's state of mind need not be direct. The fact finder may infer an intent to cause the natural and probable consequences of unlawful voluntary acts. At a preliminary hearing, the court is required to draw all inferences in favor of the prosecution. The circumstances surrounding the victim's death permit the reasonable inference that the defendant had adequate time for the exercise of reflection and judgment concerning the fatal act, and intended its outcome. The only evidence that the shooting was not deliberate and with intent to

cause the death of another was the defendant's statements of remorse and excuse made to the police after the event. However, as we said in *People v. Holder*, 658 P.2d 870, 872 (Colo.1983),

> it is not for the trial judge at a preliminary hearing to accept the defendant's version of the facts over the legitimate inferences that can be drawn from the People's evidence. Judging the merits of a case is, as we have repeatedly held, for the trier of facts at trial.

We conclude that the district court erred in holding that there was not probable cause for the charge of first-degree murder. Accordingly, the rule is made absolute, and the cause is remanded to the district court with directions to reinstate the information charging the defendant with first-degree murder.