The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
May 3, 2018

## 2018COA60

## No. 14CA1390, People v. Kessler — Constitutional Law — Searches and Seizures — Warrantless Search — Search Incident to Arrest — Motor Vehicles

A division of the court of appeals considers whether the trial court should have suppressed evidence of cocaine recovered from defendant's car after he was arrested for driving under the influence because the police lacked sufficient grounds to search the car once they seized a half-empty bottle of schnapps.

The majority concludes that officers may search the passenger compartment of a vehicle where the circumstances give rise to a reasonable, articulable suspicion that the vehicle might contain evidence of the crime for which they had probable cause to arrest. The majority further concludes that the police officers' reasonable suspicion that defendant's car contained evidence of alcohol did not

evaporate once the officers found some alcohol in the car.  Thus, it affirms the trial court's denial of the motion to suppress.

The partial dissent disagrees and concludes that the police lacked the requisite reasonable suspicion to further search the car for alcohol once they recovered a half-empty bottle of schnapps.

COLORADO COURT OF APPEALS        **2018COA60**

---

Court of Appeals No. 14CA1390
Grand County District Court No. 13CR58
Honorable Mary C. Hoak, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Daniel Steven Kessler,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE MÁRQUEZ*
Navarro, J., concurs
Dailey, J., concurs in part and dissents in part

Announced May 3, 2018

---

Cynthia H. Coffman, Attorney General, Paul Koehler, First Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Jessica A. Pitts, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2017.

¶ 1     Defendant, Daniel Steven Kessler, appeals the judgment of conviction entered on jury verdicts finding him guilty of possession of a controlled substance (cocaine), driving under the influence, possessing an open container of alcohol in a motor vehicle, operating a motor vehicle without a license, and speeding.  We affirm.

## I.     Background

¶ 2     Kessler, who lived in Fraser, borrowed his father's car to drive to Denver to see his girlfriend.  On his return, he was stopped by police between Winter Park and Fraser for driving sixty-seven miles per hour in a fifty-five mile per hour zone.  Upon approaching the car with a flashlight, the officer spotted a half-empty 375 milliliter bottle[1] of schnapps on the floor behind the passenger's seat.  The officer asked Kessler for his license, registration, and proof of insurance multiple times before Kessler responded by presenting only the registration and proof of insurance; Kessler admitted that he did not have a valid driver's license.

---

[1] This is a pint.  Glenn E. Rohrer et al., *Calculation of Blood Alcohol Concentration in Criminal Defendants*, 22 Am. J. Trial Advoc. 177, 184 (1998).

¶ 3     Noticing that Kessler had watery, bloodshot eyes, slurred speech, and an odor of alcohol on his breath, the officer asked him to step out of the car.  Kessler needed to use the car door for support to get out of the car.  When the officer asked if he had been drinking, Kessler initially told the officer that he had not; eventually, though, Kessler told him that he had drunk from the bottle of schnapps.  The officer then administered a roadside sobriety examination of Kessler.  After Kessler performed most of the maneuvers unsatisfactorily,[2] the officer administered a preliminary breath test (PBT), which registered .154 g/210L, before arresting him for driving under the influence (DUI) and placing him in the back of a police car.

¶ 4     Two other officers searched the vehicle for further evidence of alcohol consumption.  Upon lifting the armrest over the center console in the front seat, they discovered a bag containing a white powdery substance that they suspected was, and which turned out to be, cocaine.

---

[2] Kessler recited the alphabet satisfactorily but showed signs of alcohol impairment in the horizontal gaze nystagmus, walk and turn, and one-legged stand parts of the standardized roadside maneuvers.

¶ 5     Approximately three hours after Kessler's arrest, a deputy sheriff at the Grand County Jail administered a breath test as Kessler had requested.  The test results showed that he had a blood alcohol content of 0.097g/210L.

¶ 6     At trial, Kessler testified that although he had been drinking, he was not drunk, and that the cocaine found in his car did not belong to him.  It could have been put there, he posited, by others (i.e., his girlfriend and a panhandler) who had been in the car earlier that day.

¶ 7     The jury found Kessler guilty as charged.

## II.    Sufficiency of Evidence: Possession of a Controlled Substance

¶ 8     Kessler contends that the evidence was insufficient to convict him of possessing a controlled substance (cocaine).  We disagree.

¶ 9     As an initial matter, we reject the People's position that this issue was not properly preserved for appeal.  Although Kessler did not offer a precise argument, he did move for a judgment of acquittal on this and all the other counts.  In response, the prosecution addressed each count in turn, including possessing a controlled substance.  The trial court then denied Kessler's motion after, like the prosecution, addressing each count and its specific

3

evidence. Because the trial court specifically addressed the count that Kessler challenges on appeal, the issue is properly preserved. *People v. McFee*, 2016 COA 97, ¶ 31 ("Where, despite imprecision in the objection, the trial court actually rules on the claim raised on appeal, and makes findings of fact and conclusions of law, the claim is sufficiently preserved.").

¶ 10    Turning to the merits, we note Kessler was convicted under section 18-18-403.5(1), C.R.S. 2017, which provides, "it is unlawful for a person knowingly to possess a controlled substance." Here, Kessler asserts that there was insufficient evidence from which a jury could find that he possessed, or knowingly possessed, the cocaine because he borrowed the car from his father, he was not in exclusive control of the car on the date in question, and he denied knowing the cocaine was in the car. In support of his assertion, he advances two contentions — namely, that (1) where a person is not in exclusive control of the area in which drugs are found, the inference of possession may not be drawn unless statements or other circumstances buttress that inference; and (2) the mere presence of a drug does not, in and of itself, prove knowing possession of it, *see People v. Poe*, 2012 COA 166, ¶ 16.

4

¶ 11    A flaw in Kessler's arguments is their premises — that is, that he was not in exclusive possession of the car (because others had ridden in it that day) and that nothing besides the mere presence of the cocaine was presented to show he knowingly possessed it. His premises assume that the jury believed his version of events. Such an assumption is given no effect, however, in assessing a sufficiency of evidence issue.

> When assessing the sufficiency of the evidence supporting a conviction, we review the record de novo to determine whether the evidence, viewed in the light most favorable to the prosecution, was both substantial and sufficient to support the conclusion by a reasonable mind that the defendant was guilty beyond a reasonable doubt.

*People v. Griego*, 2018 CO 5, ¶ 24.

¶ 12    In analyzing the sufficiency of the evidence, we recognize that (1) it is for the fact finder to determine the difficult questions of witness credibility and the weight to be given to conflicting items of evidence, *see People v. Gibson*, 203 P.3d 571, 575 (Colo. App. 2008); (2) a fact finder is not required to accept or reject a witness's testimony in its entirety; it may believe all, part, or none of a witness's testimony, *Gordon v. Benson*, 925 P.2d 775, 778-79 (Colo.

5

1996); (3) an actor's state of mind is normally not subject to direct proof and must be inferred from his or her actions and the circumstances surrounding the occurrence, *People v. Phillips*, 219 P.3d 798, 800 (Colo. App. 2009); (4) the prosecution must be given the benefit of every inference that may fairly be drawn from the evidence, *People v. Heywood*, 2014 COA 99, ¶ 1; (5) "[i]f there is evidence upon which one may reasonably infer an element of the crime, the evidence is sufficient to sustain that element," *People v. Chase*, 2013 COA 27, ¶ 50; and (6) "[w]here reasonable minds could differ, the evidence is sufficient to sustain a conviction," *People v. Bondurant*, 2012 COA 50, ¶ 58 (quoting *People v. Carlson*, 72 P.3d 411, 416 (Colo. App. 2003)); *see People v. Arzabala*, 2012 COA 99, ¶ 13 ("An appellate court is not permitted to act as a 'thirteenth juror' and set aside a verdict because it might have drawn a different conclusion had it been the trier of fact.").

¶ 13    Initially, we note that the possibility someone else was in the car earlier that day does not change the fact that Kessler was in exclusive possession of the vehicle when it was stopped and searched, making him subject to the inferences that he knowingly possessed the cocaine. *See People v. Baca*, 109 P.3d 1005, 1007

(Colo. App. 2004) ("[K]nowledge [of drugs] can be inferred from the fact that the defendant is the driver and sole occupant of a vehicle, irrespective of whether he is also the vehicle's owner."); *see also Goliday v. State*, 708 N.E.2d 4, 6 (Ind. 1999) (holding that where the defendant was the only person in a borrowed car when stopped, his exclusive possession of the car was sufficient to raise a reasonable inference of knowledge of the presence of contraband).  Moreover, as noted above, the jury was not bound to accept Kessler's testimony that others had been in the car that day — yet another reason why, for sufficiency of evidence purposes, Kessler could be considered to have been in exclusive possession of the car.

¶ 14     Furthermore, one officer testified that the cocaine was, upon the simple movement of lifting the armrest, plainly visible — and not covered by anything — in the console.  This testimony, in conjunction with the cocaine's location just inches from where Kessler sat on and off for ten hours that day, and Kessler's testimony that, to his knowledge, no one else had interacted with the console, amply supported the inference that Kessler knowingly possessed the cocaine.  *See People v. Warner*, 251 P.3d 556, 564

(Colo. App. 2010) ("A conviction for possession of a controlled substance may be predicated on circumstantial evidence.").

### III. Admission of Evidence Concerning the Cocaine Found in the Car

¶ 15    On appeal, Kessler contends that the trial court should have suppressed evidence related to the recovery of cocaine from his car because the police lacked sufficient grounds to search the car once they seized the half-empty bottle of schnapps.  We disagree.

¶ 16    A district court's ruling on a motion to suppress evidence presents a mixed question of law and fact.  *People v. Glick*, 250 P.3d 578, 582 (Colo. 2011); *People v. Rabes*, 258 P.3d 937, 940 (Colo. App. 2010).  We defer to the court's findings of fact so long as they are supported by competent evidence in the record, but we review the court's legal conclusions de novo.  *Glick*, 250 P.3d at 582.

¶ 17    The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures.  *People v. D.F.*, 933 P.2d 9, 11-12 (Colo. 1997).  Warrantless searches are presumptively invalid unless justified by an established exception to the warrant requirement.  *People v. Prescott*, 205 P.3d 416, 419 (Colo. App. 2008).  One such exception is the search of a vehicle

incident to a lawful arrest. *People v. Coates*, 266 P.3d 397 (Colo. 2011).[3]

¶ 18    In *Arizona v. Gant*, 556 U.S. 332 (2009), the United States Supreme Court held that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id.* at 351.

¶ 19    Here, because Kessler had been removed from the car and taken into custody before the search occurred, we are concerned only with the second *Gant* situation — that is, whether it was reasonable for the police to believe that Kessler's vehicle contained evidence of the offense of arrest, DUI.

¶ 20    Many state and federal courts hold "either 'that the "nature of the charge" is determinative of whether there exists a reasonable basis to search for evidence' or that reasonableness of belief should

---

[3] This is the exception on which the parties and the court focused in the trial court. Another exception is the automobile exception. *See People v. Zuniga*, 2016 CO 52, ¶ 14. The applicability of the automobile exception was not argued in the trial court or on appeal.

be determined 'based upon common sense factors and the totality of the circumstances.'" Rebecca A. Fiss, *When "It Depends" Isn't Good Enough: The Problems Caused by the Supreme Court of North Carolina's Decision in* State v. Mbacke, 91 N.C. L. Rev. 1404, 1435–36 (2013) (footnote omitted) (first quoting *Brown v. State,* 24 So. 3d 671, 678 (Fla. Dist. Ct. App. 2009); then quoting *United States v. Reagan,* 713 F. Supp. 2d 724, 728 (E.D. Tenn. 2010)); *see State v. Eversole,* No. 15-17-03, 2017 WL 5127369, at *4 (Ohio Ct. App. Nov. 6, 2017) ("Two primary approaches to *Gant*'s reason-to-believe language have developed — the 'categorical' approach and the 'reasonableness' approach.").

¶ 21    Some courts, using the categorical approach, have held that an arrest for DUI in and of itself supplies the reason for a search incident to arrest under *Gant. See, e.g., People v. Nottoli,* 130 Cal. Rptr. 3d 884, 903 (Cal. Ct. App. 2011) ("[T]he search of the Acura incident to Reid's arrest for being under the influence was lawful under *Gant* based on the nature of that offense."); *State v. Cantrell,* 233 P.3d 178, 185 (Idaho 2010) ("In this case, Cantrell was arrested for DUI, and the DUI supplied the basis for the search.").

¶ 22    Other courts have rejected the categorical approach under

*Gant* in DUI situations, looking instead to the totality of the

circumstances to determine if the officer had a specific, reasonable,

and articulable suspicion apart from the mere nature of the offense

to justify a search of a vehicle incident to the arrest.  *See, e.g.,*

*United States v. Taylor*, 49 A.3d 818, 824 (D.C. 2012); *Taylor v.*

*State*, 137 A.3d 1029, 1033-34 (Md. 2016).

¶ 23    In *People v. Chamberlain*, 229 P.3d 1054 (Colo. 2010), the

supreme court eschewed use of a categorical (or nature of offense)

approach to determining the validity of a search of a car incident to

arrest:

> The nature of the offense of arrest is clearly
> intended to have significance, and in some
> cases it may virtually preclude the existence of
> real or documentary evidence, but a broad rule
> automatically authorizing searches incident to
> arrest for all other offenses cannot be
> reconciled with the actual holding of *Gant.*

*Id.* at 1057.

¶ 24    Consequently, "[u]nder the evidence-gathering rationale set

forth in [*Gant*], officers may search the passenger compartment of a

vehicle *where the particular circumstances give rise to a reasonable*

*articulable suspicion* that the vehicle might contain evidence of the

11

crime for which they had probable cause to arrest." *People v. Crum*, 2013 CO 66, ¶ 2 (emphasis added) (citation omitted).

¶ 25     The reasonable suspicion standard requires "considerably less than proof . . . by a preponderance of the evidence and is less demanding even than the 'fair probability' standard for probable cause." *People v. Polander*, 41 P.3d 698, 703 (Colo. 2001).  It is satisfied if the police have specific and articulable facts, greater than a mere hunch, to support their belief that evidence of the crime for which the defendant was arrested might be in the car. *See People v. Huynh*, 98 P.3d 907, 912 (Colo. App. 2004) (discussing "reasonable suspicion" in the investigatory stop context); *see also People v. McCarty*, 229 P.3d 1041, 1046 (Colo. 2010) (recognizing that, in the search of a vehicle context, "reasonable suspicion" must be based on some minimal level of objective suspicion, not merely a hunch or intuition, that evidence might be found in the arrestee's vehicle).

¶ 26     "In considering whether reasonable suspicion exists, the court looks at the totality of the circumstances, the specific and articulable facts known to the officer at the time of the encounter, and the rational inferences to be drawn from those facts," *People v.*

*Garcia,* 251 P.3d 1152, 1158 (Colo. App. 2010), in light of the officer's special training and experience, *People v. Ortega,* 34 P.3d 986, 994 (Colo. 2001); *see United States v. Guerrero,* 472 F.3d 784, 787 (10th Cir. 2007) ("[O]fficers [may] draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" (quoting *United States v. Arvizu,* 534 U.S. 266, 273 (2002))).

¶ 27    Here, the trial court determined that the evidence of cocaine was admissible because of the following:

- The officer had probable cause to arrest Kessler for driving under the influence based on his failure to adequately perform the roadside sobriety tests, his bloodshot eyes, the odor of alcohol on his breath, and the PBT results.

- Kessler's initial untruthfulness with the officer about whether or not he had been drinking made it "reasonably likely that they could find additional evidence [to support] a criminal investigation in the vehicle."

- One of the two officers who searched the vehicle stated, based on his training and experience, it was "more common than not" to find bottles of alcohol in a vehicle of someone arrested for driving under the influence.

- The first officer had seen a half-empty bottle of schnapps on the floor behind the passenger seat as he approached the vehicle.

- Kessler's intoxication, plus the officer's observation of the opened bottle of schnapps, justified the officers' search of the car for more bottles of alcohol.

¶ 28 We agree that the search that uncovered the cocaine was justified. By virtue of the first four items identified above, the police had more than ample grounds to reasonably suspect that the vehicle would contain evidence (i.e., alcohol) related to the offense for which Kessler was arrested. And they found that evidence — alcohol, in the form of the half-empty bottle of schnapps — in the car. The question, though, is did the officers' reasonable suspicion that the car contained alcohol evaporate once the officers found some alcohol? In our view, it did not.

¶ 29    Our conclusion in this respect is supported by the decision of the Wisconsin Court of Appeals in *State v. Billips*, 807 N.W.2d 32, 2011 WL 4578555 (Wis. Ct. App. 2011) (unpublished table decision), a case that, in all material respects, parallels the circumstances of the present case.  In *Billips*, the defendant was stopped for speeding.  Upon approaching the defendant's vehicle, the officer saw what looked to be an open bottle of alcohol inside the vehicle.  He removed the opened bottle from the car, had the defendant perform roadside sobriety tests, arrested him for operating a vehicle while intoxicated (OWI), and searched the car for any other open intoxicants.  The officer found a marijuana cigar end on the center console of the car and more marijuana inside a purse on the backseat of the car, and the defendant was charged with possession of tetrahydrocannabinols (THC).  Unlike in our case, the trial court suppressed the evidence of marijuana found in the defendant's vehicle.  The State successfully appealed that ruling, however.

¶ 30    In concluding that the search of the vehicle for more open containers of alcohol was proper, the Wisconsin appellate court rejected an argument identical to the one made by Kessler here —

15

that is, that the police had no ground to search the car further once they seized the open bottle of alcohol therefrom:

> [The defendant] contends that at the point of her arrest, "it was not reasonable to believe there would be any further physical evidence of OWI in the vehicle. . . . [I]f [the defendant] left intoxicants in plain view in her vehicle, it is not reasonable to assume there were others stashed away out of the deputy's sight." In other words, [the defendant] argues that because [the officer] had already removed some evidence from her vehicle, it was not reasonable to believe there would be any further physical evidence of OWI in the vehicle. This same argument was considered by this court in *State v. Smiter*, 2011 WI App 15, ¶ 16, 331 Wis. 2d 431, 793 N.W.2d 920, and rejected as "nonsensical." There, the court observed, "*Gant* expressly permits searches for evidence relevant to the crime of arrest and does not require police to stop that search once *some* evidence is found." *Smiter*, 331 Wis. 2d 431, ¶ 16.
>
> Here, it was reasonable for [the officer] to believe that further evidence related to [the defendant's] OWI arrest might be found in the vehicle.

*Id.* at *2.

¶ 31    Persuaded by this analysis, we conclude that the search of the car and discovery of the cocaine were proper.

IV. Admissibility of, and the Instruction on, the Breath Test Results

¶ 32    In two related arguments, Kessler contends that the trial court erred in (1) not suppressing the results of a breathalyzer test performed outside the two-hour time period prescribed in section 42-4-1301.1, C.R.S. 2017;[4] and (2) accordingly, instructing the jury that the delay in testing went to the weight of the evidence.[5] We conclude that Kessler has waived these issues.

¶ 33    Kessler did not ask the trial court to suppress the results of the breath test or otherwise argue to the trial court that they were inadmissible. He also did not object to the instruction on the ground asserted on appeal — namely, that a delay in testing rendered the test results inadmissible.[6]

---

[4] Section 42-4-1301.1, C.R.S. 2017, which is commonly referred to as the "express consent" statute, allows a driver suspected of drinking to choose a method of testing for his blood alcohol level: breathalyzer or blood test; but the driver must choose one method and may not refuse the test. *See* § 42-4-1301.1(2)(a)(I).

[5] On appeal, Kessler objects to the part of an instruction that said, "[a]ccording to the law, two hours is considered a reasonable time. A test taken outside of two hours may affect the weight that should be given to results of the test."

[6] To be sure, defense counsel did object to the instruction — but on grounds different from those asserted on appeal. In the trial court, he objected to the instruction because it included various

17

¶ 34 So, Kessler has presented a new, or additional, argument on appeal. Sometimes, we review a new or additional argument raised for the first time on appeal for plain error. *People v. Mares*, 263 P.3d 699, 702 (Colo. App. 2011) ("When, as here, a defendant fails to object or asserts on appeal a ground different from the ground asserted in the trial court, we review for plain error.").

¶ 35 However, in this case, the new ground (i.e., that the delay in conducting the breath test rendered its results inadmissible) for both of his appellate arguments was explicitly disavowed by defense counsel in the trial court. In prefacing the objection he made to the instruction, *see supra* note 6, defense counsel took the position that the tests were admissible and that the only question was the weight to be given them: "I do not disagree with the Court in terms of the admission of the test . . . . So the test was admitted. We can certainly argue the weight."

¶ 36 By agreeing that the test results were admissible and that the delay in conducting the tests affected only their weight, defense counsel waived Kessler's right to argue, as he does here, precisely

_____

presumptions about blood alcohol levels obtained within a "reasonable time frame," which, he said, "we do not have here."

the opposite. *See, e.g., United States v. Olano*, 507 U.S. 725, 733 (1993) (stating that a waiver occurs when a defendant specifically removes claims from the trial court's consideration by intentionally relinquishing or abandoning a known right); *United States v. Walton*, 255 F.3d 437, 441 (7th Cir. 2001) (a "waived" issue is the result of an "intentional choice not to assert [a] right" (quoting *United States v. Cooper*, 243 F.3d 411, 416 (7th Cir. 2001))).

¶ 37    Recently, our supreme court held that defense counsel's general acquiescence to the jury instructions did not waive the defendant's appellate claim that the elemental instruction effected a constructive amendment of the charge, at least in the absence of other indications that counsel was aware of the defect in the elemental instruction. *See People v. Rediger*, 2018 CO 32, ¶¶ 41-47. Here, however, an elemental instruction is not at issue, and defense counsel did more than generally acquiesce or fail to object. Defense counsel explicitly agreed that the specific evidence at issue was admissible. So, Kessler, through his counsel, intentionally waived the particular point raised on appeal.

¶ 38    Because defense counsel explicitly waived the very claim Kessler makes on appeal, there is no issue of error for us to review.

*See People v. Abeyta*, 923 P.2d 318, 321 (Colo. App. 1996) (stating that where a defendant has waived a right, there is no error or omission by the court, and thus nothing for an appellate court to review), *superseded by rule*, Crim. P. 35(c), *on other grounds as recognized in People v. Roy*, 252 P.3d 24, 27 (Colo. App. 2010); *see also Olano*, 507 U.S. at 733 (distinguishing between a "waived" and a "forfeited" claim of error, and noting that a "waived" claim of error presents nothing for an appellate court to review); *Walton*, 255 F.3d at 441 ("[A] waived issue is unreviewable because a valid waiver leaves no error to correct and extinguishes all appellate review of the issue.").

V.     Questioning Kessler About An Officer's Veracity

¶ 39     At trial, the amount of alcohol in the bottle of schnapps when the officer discovered it was contested: the officer said it was half full, while Kessler testified it was two-thirds full.  During cross-examination, the prosecution asked Kessler if the officer "made up" the amount of schnapps in the bottle, to which Kessler responded, "Yeah.  I didn't say that to him."

¶ 40     On appeal, Kessler contends that the prosecution's question was improper under *Liggett v. People*, 135 P.3d 725 (2006), in which

20

the supreme court held that it is improper to ask a witness to comment on the veracity of another witness. Significantly, however, defense counsel lodged no objection to the question; consequently, reversal is not warranted in the absence of a showing of plain error. *People v. Ujaama*, 2012 COA 36, ¶ 38.

¶ 41 Plain error "provide[s] a basis for relief only on rare occasions," in part because "it is difficult to 'fault a trial court for failing to rule on an issue that had not been presented to it.'" *Id.* at ¶ 40 (quoting *United States v. Simmonds*, 931 F.2d 685, 688 (10th Cir. 1991)). Relief under the plain error doctrine is limited to error that is "obvious and substantial." *Hagos v. People*, 2012 CO 63, ¶ 14.

¶ 42 Under *Liggett*, the prosecutor's question (i.e., asking Kessler if the officer "made up" the amount of schnapps in the bottle) would ordinarily be improper because it was, in essence, another way of asking Kessler whether the officer was "lying." *See Liggett*, 135 P.3d at 733 (holding questions asking one witness whether another witness was "mistaken" are improper).

¶ 43 But the People argue those questions were not improper *in this case* because Kessler had opened the door to such questioning when he initiated the exchange by stating that the officer

21

"exaggerated" when he testified that Kessler admitted to having drunk half of the bottle. *See, e.g., United States v. Schmitz*, 634 F.3d 1247, 1270 (11th Cir. 2011) (The court "recogniz[ed] that were-they-lying questions might be proper 'if a defendant opened the door by testifying on direct that another witness was lying.'" (quoting *United States v. Harris*, 471 F.3d 507, 512 (3d Cir. 2006))).

¶ 44 The problem with the People's argument, however, is that the testimony of Kessler on which they rely was not elicited by him on direct examination, but, rather, by them earlier in their cross-examination of him. Because a party cannot open its own door to create an opportunity for the admission of otherwise inadmissible evidence, *see State v. Prine*, 200 P.3d 1, 11 (Kan. 2009), we conclude that, had a proper objection been made, the trial court would have erred in allowing the prosecutor to ask Kessler the referenced question.

¶ 45 But "[t]o qualify as plain error, an error must generally be so obvious that a trial judge should be able to avoid it without the benefit of an objection." *Scott v. People*, 2017 CO 16, ¶ 16. For an error to be "this obvious," it must ordinarily contravene (1) a clear

statutory command; (2) a well-settled legal principle; or (3) Colorado case law. *Id.*

¶ 46    Here, we have neither a clear statutory command nor on-point Colorado case authority. We do, however, have a "well-settled legal principle" — namely, that witnesses should not be asked to comment on the veracity of other witnesses — as well as a twelve-year-old case holding that questions closely analogous to the question asked of Kessler (i.e., whether the officer "made up" the amount he said was in the bottle of schnapps) are improper. *See Liggett,* 135 P.3d at 733 (holding questions about whether a witness was "mistaken" and whether a witness was lying are improper). Because the case law establishing and applying the legal principle in closely analogous circumstances is well settled, we conclude that the error in allowing those two questions should have been "obvious" to the trial court.

¶ 47    However, to obtain relief under the plain error rule, it is not enough that "obvious" error occurred when the prosecutor was allowed to ask Kessler whether the officer "made up" something. The error must also be "substantial." *Hagos,* ¶ 14.

¶ 48    To qualify as "substantial" in this context, an error must be "seriously prejudicial" — that is, it must have so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the defendant's conviction. *Ujaama*, ¶ 43; *see also Hagos*, ¶ 14. For the following reasons, we conclude that the "obvious" error occasioned by the prosecutor's asking Kessler whether the officer "made up" the amount of alcohol was not "substantial."

¶ 49    First, the question the prosecutor asked was not only a small part of the case, it was also a small part of Kessler's twenty pages of testimony. *Cf. People v. Herr*, 868 P.2d 1121, 1125 (Colo. App. 1993) (prosecutor's "improper comments were isolated ones made during a very lengthy summation").

¶ 50    Second, similar to *Liggett* — where the court found no plain error — an assertion that the officer "made up" things was less damaging than a question that would have explicitly asserted that the officer was lying. *Liggett*, 135 P.3d at 735.

¶ 51    Third, the evidence against Kessler was strong. The prosecution presented (1) the officer's testimony regarding Kessler's appearance and unsatisfactory performance in the roadside

maneuvers; (2) Kessler's blood alcohol level results from the breathalyzer test; and (3) Kessler's own admission that he had drunk from the bottle of schnapps. *See People v. Cordova*, 293 P.3d 114, 122 (Colo. App. 2011) (because "the evidence of [the] defendant's guilt was strong," prosecutor's misconduct was not plain error).

¶ 52     In light of these circumstances, we conclude that the prosecutor's question did not cast serious doubt on the reliability of Kessler's conviction. Consequently, the error was not "substantial" and does not warrant reversal under the plain error rule.

## VI.   Conclusion

¶ 53     The judgment of conviction is affirmed.

JUDGE NAVARRO concurs.

JUDGE DAILEY concurs in part and dissents in part.

JUDGE DAILEY, concurring in part and dissenting in part.

¶ 54    I agree with all but Part III of the majority's opinion. Unlike the majority, I do not find persuasive the decision in *State v. Billips*, 807 N.W.2d 32, 2011 WL 4578555 (Wis. Ct. App. 2011) (unpublished table decision). To the contrary, in my view the police were required to have a factual basis upon which to support an articulable, reasonable suspicion to believe that the vehicle might contain one or more bottles of alcohol *in addition to* the one initially observed in and recovered from the car. Accepting that Kessler was intoxicated, there is no reason evident in the record to believe that he likely consumed more than the observed, half-empty bottle of schnapps.

¶ 55    The People argue, however, that the officers' experience and training supported the search for more bottles of alcohol. But the officers did not give any details about their training or experience with DUI arrests or provide any particularized reason based on that experience or training to believe that Kessler's vehicle might contain evidence of even more consumed alcohol than the already recovered half-empty bottle of schnapps. In similar circumstances, the District of Columbia Court of Appeals said:

> As we have explained, [the officer's] experience must be considered as part of the totality of the circumstances. In this case, however, "we know too little about [the officer's] experience," *Duckett v. United States*, 886 A.2d 548, 552 (D.C. 2005), to place much weight upon his conclusory statement that "typically someone who is driving under the influence also has an open container of alcohol or multiple containers of alcohol in their vehicle." Without a great deal more detail, we have no basis for determining whether such behavior is indeed "typical" of someone driving under the influence. *Moreover, relying uncritically on that experience would amount to endorsing a per se rule governing DUI cases. See id.* at 553 ("Whatever [the officer's] experience in traffic stops of others, we think that the necessary particularized and objective basis for suspecting [the defendant] was absent here.").

*United States v. Taylor*, 49 A.3d 818, 827 (D.C. 2012) (emphasis added); *see United States v. Reagan*, 713 F. Supp. 2d 724, 732 (E.D. Tenn. 2010) (holding an officer must have something more than general prior experience of finding alcoholic beverage containers in a DUI arrestee's vehicle to justify a search of the vehicle); *see also State v. Eversole*, No. 15-17-03, 2017 WL 5127369, at *10 (Ohio Ct. App. Nov. 6, 2017) ("[A]lthough a law-enforcement officer's general prior experience is one of the common-sense factors to consider when deciding the reasonableness of his or her belief that evidence

27

of specific crime is located inside a vehicle's passenger compartment, that general prior experience alone is not enough to establish a reasonable belief that evidence of [DUI] is contained in a vehicle.").

¶ 56    I am persuaded by these authorities. And because the record contains no reason particularized to Kessler or the circumstances of this case, I would conclude that the police lacked the requisite reasonable suspicion to further search the car for alcohol once they recovered the half-empty bottle of schnapps. *See People v. McCarty*, 229 P.3d 1041, 1046 (Colo. 2010) ("[A]lthough it is perhaps conceivable that the arrestee's vehicle might contain some evidence of the possession offense for which the officers had probable cause to arrest, *nothing peculiar to these circumstances supported a reasonable suspicion that any additional evidence existed*, much less that it would reside in the arrestee's vehicle, rather than on his person or elsewhere.") (emphasis added); *cf. People v. Estrada*, No. B221094, 2011 WL 212826, at *5-6 (Cal. Ct. App. Jan. 25, 2011) (unpublished opinion) (rejecting, under *Gant*, the validity of a search of a vehicle, where, following the defendant's arrest for public intoxication, the officer "'opened the truck, discovered the

container that [the defendant] tossed in there,' which was . . . exactly the type of bottle from which [the officer] believed defendant had been drinking," and "continued to look in the car to see if there was [*sic*] any other alcoholic beverages *and what not*"; and concluding, "[t]o allow a search of a vehicle here would be to permit general rummaging").

¶ 57    Because the search that uncovered the cocaine was illegal, all evidence pertaining to the cocaine or its recovery should have been suppressed at trial.  The error in admitting such evidence could not be considered harmless with respect to the count charging Kessler with its possession, and Kessler's conviction on that count should be vacated.