18CA1691 Peo v Gonzalez 01-20-2022 COLORADO COURT OF APPEALS Court of Appeals No. 18CA1691 Eagle County District Court No. 17CR192 Honorable Paul R. Dunkelman, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Pedro Gonzalez, Defendant-Appellant. JUDGMENT AFFIRMED Division II Opinion by JUDGE PAWAR Furman and Kuhn, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced January 20, 2022 Philip J. Weiser, Attorney General, William G. Kozeliski, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Megan A. Ring, Colorado State Public Defender, Nathaniel E. Deakins, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant
1 ¶ 1 Defendant, Pedro Gonzalez, appeals the judgment of conviction and sentence entered after a jury found him guilty of attempted first degree murder (after deliberation) and first degree assault. We affirm. I. Background ¶ 2 Gonzalez was the last customer in the bar where the victim worked as a bartender. After serving Gonzalez a drink at closing time, the victim walked to the kitchen to sweep the floor. Gonzalez followed her into the kitchen and attacked her, repeatedly hitting her with a beer bottle and his fists before kicking and choking her. The victim was eventually able to get up and run away. ¶ 3 The prosecution charged Gonzalez with attempted first degree murder (after deliberation) and first degree assault. At trial, the prosecution introduced a surveillance video of the assault. Gonzalez testified that he assaulted the victim in the heat of passion after the victim called him a racial slur. The victim testified and denied calling him a slur. The jury convicted Gonzalez as charged. ¶ 4 On appeal, Gonzalez argues his convictions should be reversed because (1) the prosecution introduced insufficient evidence to 
2 demonstrate that he acted after deliberation and (2) the prosecutor committed misconduct when she misstated the law during closing argument. He further asserts the trial court denied his statutory right to present mitigating information at sentencing. We examine each argument in turn. II. Sufficiency of the Evidence ¶ 5 Gonzalez asserts the evidence was insufficient to prove that he acted with the requisite mens rea to support his conviction for attempted first degree murder after deliberation. Viewing the evidence in the light most favorable to the prosecution, we disagree. A. Applicable Law ¶ 6 We review de novo whether the evidence was sufficient to support a conviction. See People v. Donald, 2020 CO 24, ¶ 18. In doing so, we view the evidence as a whole and in the light most favorable to the prosecution, giving the prosecution the benefit of all reasonable inferences that might fairly be drawn from the evidence. Id. at ¶¶ 18-19. “[I]f there is evidence upon which one may reasonably infer an element of the crime, the evidence is sufficient to sustain that element.” People v. Kessler, 2018 COA 60, ¶ 12 (quoting People v. Chase, 2013 COA 27, ¶ 50). 
3 ¶ 7 A person commits attempted first degree murder after deliberation under sections 18-2-101(1) and 18-3-102(1), C.R.S. 2021, if “[a]fter deliberation and with the intent to cause the death of a person other than himself,” he engages in conduct constituting a substantial step toward causing the death of that person. As used in the first degree murder statute, “[t]he term ‘after deliberation’ means not only intentionally but also that the decision to commit the act has been made after the exercise of reflection and judgment concerning the act.” § 18-3-101(3), C.R.S. 2021. Thus, “[a]n act committed after deliberation is never one which has been committed in a hasty or impulsive manner.” Id. ¶ 8 The state of mind element of an offense “is normally not subject to direct proof and must be inferred from [the defendant’s] actions and the circumstances surrounding the occurrence.” Kessler, ¶ 12. ¶ 9 The jury’s verdicts must ultimately be upheld if there is sufficient evidence to support them. People v. Dunaway, 88 P.3d 619, 625 (Colo. 2004). B. Discussion ¶ 10 The jury heard the following evidence at trial: 
4 • The victim testified that Gonzalez hit her multiple times with a beer bottle and his fists before attempting to choke her on the floor. • Gonzalez testified that he heard the victim call him a racial slur before getting “real mad” and “going after her.” He further testified that he wanted to hurt the victim after he heard that comment. • Video evidence showed Gonzalez stand at the bar for several minutes after drinking his last beer before following the victim into the kitchen and commencing the attack. • The surveillance video also showed Gonzalez stop to remove his glasses and place them in the sink before resuming his assault on the victim. • Both the victim and Gonzalez testified that Gonzalez followed the victim into the street when she ran away. ¶ 11 Viewing this evidence in the light most favorable to the prosecution, we conclude that the jury could reasonably infer “from [Gonzalez’s] actions and the circumstances surrounding the occurrence” that he attempted to cause the victim’s death after 
5 deliberation and with intent. Kessler, ¶ 12; § 18-2-101(1); § 18-3-
102(1). Gonzalez’s own testimony acknowledged that he acted out of a desire to hurt the victim. See § 18-1-501(5), C.R.S. 2021 (“A person acts . . . ‘with intent’ when his conscious objective is to cause the specific result proscribed by the statute defining the offense.”). And the evidence showed he did so by beating her with a beer bottle, punching her with his fists, choking her with his hands, and kicking her with his feet to inflict multiple injuries on the victim’s face, head, and body, including visible bruising on her neck. See People v. Dist. Ct., 779 P.2d 385, 388 (Colo. 1989); see also People v. Saleh, 45 P.3d 1272, 1275 (Colo. 2002) (“Any object can be a deadly weapon if it is used in a manner capable of producing death or serious bodily injury.”); People v. Bartowsheski, 661 P.2d 235, 242 (Colo. 1983) (“[T]he nature and number of these wounds were such as to permit the inference that the attack on the victim continued even after she had been rendered helpless.”). ¶ 12 Evidence that Gonzalez stopped to remove his glasses and place them in the sink before resuming the attack and later followed the victim into the street when she was able to escape the attack further support an inference of deliberation. See People v. McBride, 
6 228 P.3d 216, 226 (Colo. App. 2009) (finding evidence of deliberation where the defendant had been angry at the victim and “had enough time . . . to reflect on what he was about to do”); People v. Mackey, 185 Colo. 24, 32, 521 P.2d 910, 915 (1974) (finding sufficient evidence to support a first degree murder conviction where “the victim fell to the floor and tried to crawl to safety, but several more shots were fired at him” and “[t]he defendant followed the unarmed victim into another room” before shooting at him again). ¶ 13 We are not persuaded by Gonzalez’s arguments that the prosecution failed to prove deliberation because there was no pre-
existing hostility between Gonzalez and the victim, the victim’s injuries were not deadly, and Gonzalez never boasted of the attack. While circumstantial evidence of deliberation “may include” these factors, they are not required in every case. Dist. Ct., 779 P.2d at 388 (relying on, but not requiring, use of a deadly weapon as indirect evidence of deliberation and intent). ¶ 14 Likewise, although Gonzalez emphasizes the evidence he asserts demonstrated that he acted in the heat of the moment, the jury was entitled to weigh the evidence and come to its own 
7 conclusion on this issue. For example, Gonzalez points to the victim calling him a racial slur making him so angry “he couldn’t control his behavior” as evidence that he acted in haste and without deliberation. But the victim denied calling Gonzalez a racial slur, and “it is for the fact finder to determine the difficult questions of witness credibility and the weight to be given to conflicting items of evidence.” Kessler, ¶ 12. ¶ 15 Because reasonable minds could differ, we conclude the evidence of deliberation was sufficient to support Gonzalez’s conviction for attempted first degree murder after deliberation. Id. III. Prosecutorial Misconduct ¶ 16 Gonzalez also argues the prosecutor committed plain error by misstating the law during closing argument. Although we agree that the prosecutor incorrectly stated the “after deliberation” element to the jury, we conclude the error is not reversible. A. Additional Facts ¶ 17 During closing argument, the prosecutor argued: Now, after deliberation. This sounds like it’s going to take a lot of time and you have to think about it and ponder it and maybe write down a pro and a con list and meditate on it and bounce it off other people. No, you don’t. 
8 That’s not what the law says. Premeditation requires time for one thought to follow another. That’s it. That can happen in a fraction of a second. The case law also says that no particular time needs pass in order to establish deliberation and premedi[t]ation. The important thing is that there must be at least enough time to permit one thought to follow another. ¶ 18 Referencing Gonzalez’s theory that he heard the victim call him a slur and attacked her out of anger, the prosecutor then argued Gonzalez “took the beer and he stepped and he stepped and he stepped and he followed her. That is plenty of time for deliberation and premeditation.” ¶ 19 Gonzalez did not object. B. Applicable Law ¶ 20 “[A] prosecutor, while free to strike hard blows, is not at liberty to strike foul ones.” Domingo-Gomez v. People, 125 P.3d 1043, 1048 (Colo. 2005) (citation omitted). The prosecutor may use every legitimate means to bring about a just conviction but must avoid using improper methods designed to obtain an unjust result, including misstating or misinterpreting the law. Id.; People v. Grant, 174 P.3d 798, 810 (Colo. App. 2007). 
9 ¶ 21 In reviewing prosecutorial misconduct claims, we engage in a two-step analysis, determining, first, whether the prosecutor’s conduct was improper based on the totality of the circumstances and, second, whether such actions warrant reversal. Wend v. People, 235 P.3d 1089, 1096 (Colo. 2010). We evaluate claims of impropriety “in the context of the argument as a whole and in light of the evidence before the jury.” People v. Samson, 2012 COA 167, ¶ 30; see also People v. Hogan, 114 P.3d 42, 55 (Colo. App. 2004) (“In determining whether prosecutorial misconduct mandates a new trial, an appellate court must evaluate the severity and frequency of misconduct, . . . and the likelihood that the misconduct constituted a material factor leading to the defendant’s conviction.”). ¶ 22 When a defendant does not object contemporaneously, we review for plain error. People v. Strock, 252 P.3d 1148, 1152 (Colo. App. 2010). “Plain error is error that is ‘obvious and substantial.’” People v. Pollard, 2013 COA 31M, ¶ 24 (quoting Hagos v. People, 2012 CO 63, ¶ 14). In other words, to qualify as plain error, an error must both (1) be “so clear-cut, so obvious, that a trial judge should be able to avoid it without benefit of objection”; and (2) so undermine the fundamental fairness of the trial itself as to cast 
10 serious doubt on the reliability of the judgment of conviction. Id. at ¶¶ 39, 43. C. Discussion ¶ 23 The prosecution concedes, and we agree, that the prosecutor misstated the law governing deliberation. See Key v. People, 715 P.2d 319, 322-23 (Colo. 1986) (holding a court-issued jury instruction “that deliberation requires only an ‘interval sufficient for one thought to follow another’” was constitutional error). As Gonzalez correctly points out, multiple divisions of this court have disapproved a prosecutor’s definition of “after deliberation” as requiring only the amount of time for “one thought to follow another.” See People v. Cevallos-Acosta, 140 P.3d 116, 123 (Colo. App. 2005); Grant, 174 P.3d at 810 (“We agree with defendant that the prosecution’s comments referenced a legal standard that has not been in effect since 1973.”). ¶ 24 Likewise, the prosecutor’s statement that premeditation and deliberation can happen in “a fraction of a second” was improper. See McBride, 228 P.3d at 225 (noting that a prosecutor’s comment that deliberation could happen in as “‘fast’ as ‘[a] second’” contradicted Colorado law requiring that some appreciable length of 
11 time must have elapsed to allow deliberation). Because the prosecutor’s comments contravened well-settled legal principles and Colorado case law, we conclude these errors were obvious. Pollard, ¶ 40. ¶ 25 Even obvious error is not reversible, however, in the absence of a substantial impact on the fairness of a defendant’s trial. Hagos, ¶ 18 (“We have recognized plain error as those errors that ‘so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction.’” (quoting Wilson v. People, 743 P.2d 415, 420 (Colo. 1987))). Here, we cannot conclude the prosecutor’s misstatement of the law constituted a material factor leading to Gonzalez’s conviction. ¶ 26 As an initial matter, we disagree with Gonzalez that the prosecutor’s misstatement had the effect of lowering the burden of proof. The jury was properly instructed on the correct definition of “after deliberation,”
1 and we presume the jury followed this 1 Consistent with section 18-3-101(3), C.R.S. 2021, the jury was instructed: “The term ‘after deliberation’ means not only intentionally, but also that the decision to commit the act has been made after the exercise of reflection and judgment concerning the act. An act committed after deliberation is never one which has been committed in a hasty or impulsive manner.” 
12 instruction. Cevallos-Acosta, 140 P.3d at 123. Defense counsel also highlighted the correct definition in closing argument. And though the prosecutor improperly referenced “the case law” governing deliberation, she began her closing argument by emphasizing that “the jury instructions . . . are the laws that you have to apply to the evidence that you have seen and heard here.” Viewed in this context, we conclude the prosecutor’s misstatement of the law “did not so distort the definition of ‘after deliberation’ . . . that the prosecution was relieved of its burden of proving the mental culpability requirement of [attempted] first-degree murder beyond a reasonable doubt.” Martinez v. People, 2015 CO 16, ¶ 19 (quoting Key, 715 P.2d at 323). ¶ 27 Moreover, the prosecutor’s improper statement of law was isolated and occurred in the context of arguing that the evidence showed Gonzalez acted after sufficient time for reflection and judgment. Specifically, the prosecutor argued that under Gonzalez’s own theory, the video evidence showed Gonzalez waited for six minutes after being called a slur before he attacked the 
13 victim.
2 See Grant, 174 P.3d at 811 (concluding that “only one brief reference in argument to the improper definition of ‘after deliberation’” was not plain error); Cevallos-Acosta, 140 P.3d at 123 (finding no plain error where “[a]lthough the prosecutor . . . made one brief comment improperly defining this element during summation, she did not focus on it”). Thus, despite the misstatement, the prosecutor properly focused the jury’s attention on evidence that Gonzalez deliberated for an appreciable length of time. McBride, 228 P.3d at 225; People v. Caldwell, 43 P.3d 663, 672 (Colo. App. 2001) (finding no plain error where an improper statement of the law occurred only once, the jury was properly instructed on the law, and “the prosecutor argued in closing that defendant had to have taken time to make a decision”). Accordingly, reversal is not warranted. Hagos, ¶ 18. 2 Specifically, the prosecutor argued, He claims he heard this slur. He got angry . . . . And then what did he do? . . . In that video you will see him standing at the bar while she’s going from the bar into the kitchen and back and forth. And he’s standing there drinking that beer. And it’s from 1:12 am until the attack, six minutes. 
14 IV. Right to Present Mitigating Sentencing Information ¶ 28 Finally, Gonzalez argues the trial court denied his right to present information in mitigation of punishment when it refused to allow a juror to testify on his behalf at sentencing. We discern no abuse of discretion. A. Additional Facts ¶ 29 At sentencing, defense counsel indicated that a member of the jury that deliberated at Gonzalez’s trial desired to make “a brief statement . . . asking the [c]ourt to essentially acknowledge that [Gonzalez is] a human being and not give him the maximum.” The trial court stated it was concerned because the juror had been instructed not to think about sentencing during deliberations, and it did not want to set a precedent for future jurors to be “thinking about what the sentence is going to be.” It further noted its concern that the juror would “get[] on the podium [and] start[] talking about deliberations,” bringing in information that is irrelevant to sentencing. In light of these considerations, the court refused to allow defense counsel to call the juror as a witness but allowed the juror’s written statement to be included as part of the sentencing record. 
15 B. Applicable Law ¶ 30 After receiving a presentence report prepared by a probation officer, the sentencing court must grant the defendant “an opportunity to make a statement in his or her own behalf and to present any information in mitigation of punishment.” § 16-11-
102(5), C.R.S. 2021; Crim. P. 32(b). ¶ 31 The court’s decision to exclude evidence in a sentencing hearing will not be reversed absent an abuse of discretion. People v. Borrego, 774 P.2d 854, 856 (Colo. 1989); Romero v. People, 2017 CO 37, ¶ 11 (noting a court abuses its discretion if its evidentiary ruling is “manifestly arbitrary, unreasonable, or unfair” (quoting People v. Stewart, 55 P.3d 107, 122 (Colo. 2002))). C. Discussion ¶ 32 Although a defendant has a right to present mitigating information at sentencing, “[t]his right to present information is limited . . . by the context of the proceeding in which it occurs.” People v. Padilla, 907 P.2d 601, 608 (Colo. 1995). And at sentencing, the court is entitled to “wide discretion to determine what evidence is relevant and admissible.” Borrego, 774 P.2d at 855. Thus, despite section 16-11-102’s use of the word “any,” a 
16 defendant’s right to present mitigating information is not absolute. See Padilla, 907 P.2d at 609 (citing United States v. Giltner, 889 F.2d 1004, 1008 (11th Cir. 1989), for the proposition that such right does not encompass the right to an evidentiary hearing or to “call and cross-examine witnesses to rebut the information” relied upon by the sentencing court). ¶ 33 In allowing defense counsel to read the juror’s full written statement into the record, the trial court emphasized its desire to “err on the side of letting [Gonzalez] present the evidence he thinks he needs for sentencing.” Its decision not to allow the juror to testify directly was supported by sound rationale related to the juror’s role in deliberations and the risk that she might introduce irrelevant information at the sentencing stage. See Borrego, 774 P.2d at 855. Because the court’s ruling was not “manifestly arbitrary, unreasonable, or unfair,” we will not disturb it. Romero, ¶ 11 (quoting Stewart, 55 P.3d at 122). V. Conclusion ¶ 34 The judgment is affirmed. JUDGE FURMAN and JUDGE KUHN concur.