**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Rudy SAIZ, Defendant-Appellant.**

**Nos. 80CA1176, 81CA0185.**

Colorado Court of Appeals, Div. I.

Sept. 2, 1982.

As Modified on Denial of Rehearing Oct. 28, 1982.

Certiorari Denied Feb. 22, 1983.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Jeffrey Weinman, Asst. Atty. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, Colorado State Public Defender, Charles F. Kaiser, Deputy State Public Defender, Denver, for defendant-appellant.

COYTE, Judge.

Defendant appeals from a jury verdict finding him guilty of second degree assault. We affirm.

The evidence revealed that on June 9, 1980, the defendant and another prisoner were being escorted into a courtroom. Outside the courtroom, defendant's girlfriend stepped forward and attempted to embrace the defendant. The victim, a deputy sheriff, who was guarding the defendant, attempted to separate them. Defendant turned and punched the victim and told him not to touch his girlfriend. Immediately after this incident, both defendant and the victim apologized to each other and defendant was then escorted into the courtroom.

## I

Defendant first contends that the trial court erred in limiting the voir dire questioning of the jurors. We disagree.

Prior to the beginning of the voir dire, the trial court informed counsel that they were not to question prospective jurors on the defendant's theory of the case or ask hypothetical questions. Defense counsel, however, attempted to ask a juror a hypothetical questioning concerning the use of force to protect a third person which was defendant's theory of the case. The trial court, pursuant to its former instructions, refused to permit defense counsel to finish asking the question.

Defendant now contends that this restriction placed impermissible limitations on the voir dire questioning. This contention is, however, without merit.

■ Restrictions on the scope of the voir dire examination are within the trial court's discretion and will not be reversed on appeal absent an abuse of that discretion. *People v. Brake,* 191 Colo. 390, 553 P.2d 763 (1976). As stated in *State v. Manley,* 54 N.J. 259, 255 A.2d 193 (1969):

"In many instances it has taken as long or longer to empanel a jury as to try the case. The impression is inescapable that the aim of counsel is no longer exclusion of unfit or partial or biased jurors. It has become the selection of a jury as favorable to the party's point of view as indoctrination through the medium of questions on assumed facts and rules of law can accomplish."

The *Manley* court further noted the improper purpose of such questioning, as follows:

"Under the guise of eliciting information they attempt to impart to the jurors a conception of the law highly favorable to one side of the case. They invade the province of the court, are time-consuming, tend to confuse the jurors and do nothing to further the purpose of the voir dire procedure."

The Colorado Supreme Court has also recently indicated its concern with unduly lengthy voir dire examination by amending Crim.P. 24 to allow the trial court to place reasonable limitations on the time available to counsel for voir dire examination.

■ The trial court here, although it was concerned with the undue amount of time consumed by voir dire questioning, nonetheless gave counsel full opportunity to question jurors regarding any matters which might have shown bias or prejudice. Hence, its limitations on the use of hypothetical questions were well within its discretion and will not be disturbed on appeal.

## II

■ Defendant next contends that the trial court erred in excluding defendant's proffered evidence that the complaining witness did not wish to have the case prosecuted. We disagree.

The disputed evidence in question was first elicited on defendant's cross-examination of the complaining witness. In response to a question propounded by defendant, the complaining witness testified that there were no hard feelings between himself and defendant and that he and the defendant had apologized to each other following the altercation.

Defendant's girlfriend subsequently testified that the complaining witness had struck her in the neck when attempting to separate her and the defendant. She then testified that she waited four days before filing a complaint against him. The prosecution attempted to impeach her testimony by asking her why she waited four days. She replied that she did so because she wanted to see first if the complaining witness was going to file a complaint against the defendant.

Defendant objected to this testimony on the ground that it would imply that the complaining witness was the one who would decide whether to file charges when such was not the case. The court ordered the prosecution to drop the line of questioning, but allowed the testimony already presented to remain in. Defendant then asked to recall the complaining witness and made an offer of proof that the complaining witness would testify that he was opposed to bringing criminal charges. The trial court refused to allow the witness to be recalled.

Defendant now contends that it was error for the court not to permit him to rebut the prosecution's evidence as to the wishes of the complaining witness. This contention is without merit.

The wishes of the complaining witness were not relevant to any material issues in this case. The trial court properly did not allow the prosecution to pursue the matter beyond the limited impeachment purposes for which it was originally offered. Any

rebuttal by defendant on this point would have injected irrelevant and confusing issues into the trial. *Johnson v. People,* 171 Colo. 505, 468 P.2d 745 (1970). Hence, the trial court did not err in refusing to permit defendant to recall the complaining witness to have him explain his feelings about the incident, especially since in response to defense questioning, the complaining witness had already testified that he did not want to have criminal charges pressed.

■ Defendant also contends that the trial court erred in permitting the prosecution to make a statement in the rebuttal portion of its closing argument to the effect that nobody knew whether the complaining witness had been satisfied with the defendant's apology. This statement however was made in response to defendant's statement in his closing argument that the witness was apparently satisfied with defendant's apology. As defendant himself opened the door on this subject, he invited rebuttal by the prosecution and cannot now complain that the trial court improperly permitted such comment.

## III

Defendant next contends that the trial court erred in not instructing the jury as to the culpable mental state required for conviction. He argues that, although § 18–3–201(1)(f), C.R.S.1973 (1978 Repl.Vol. 8) does not require proof of a culpable mental state for the element of violently applying physical force, one should nonetheless be implied. He then argues that the requisite mental state should be either the specific intent to cause serious bodily injury or the general intent to cause bodily injury. We disagree.

Section 18–3–203(1)(f), C.R.S.1973 (1978 Repl.Vol. 8) provides:

"A person commits a crime of assault in the second degree if: ... (f) while lawfully confined or in custody, he violently applies physical force against the person of a peace officer ... engaged in the performance of his duties ... and the person committing the offense knows or reasonably should know that the victim is

a peace officer ... engaged in the performance of his duties ..."

The court's instructions to the jury were couched in the statutory language and set forth the elements of the offense as defined by the statute. Following the statutory language, the instructions did not apply the mental state of knowingly to the element of violently applying physical force. A further instruction given by the court defined the mental state of knowingly.

In *People v. Walker,* 634 P.2d 1026 (Colo. App.1981), this court considered and rejected the assertion that the phrase "violently applies physical force" must be construed to imply a requirement of specific intent to inflict serious bodily injury. *Walker* left open the question of whether the statute requires any intent at all.

■ The statute as written does not contain any requirement that a defendant intend to cause bodily injury when he violently applies physical force to the person of a peace officer. Section 18–3–203(1)(f), C.R. S.1973 (1978 Repl.Vol. 8). However, legislative silence on the element of intent is not generally construed as an indication that no intent is required. *People v. Bridges,* 199 Colo. 520, 612 P.2d 1110 (1980). Moreover, § 18–1–502, C.R.S.1973 (1978 Repl.Vol. 8) provides:

> "If a culpable mental state is required with respect to any material element of an offense, the offense is one of 'mental culpability.' "

Section 18–1–503(4), C.R.S.1973 (1978 Repl. Vol. 8) further provides:

> "When a statute defining an offense prescribes as an element thereof, a specified culpable mental state, that mental state is deemed to apply to every element of the offense unless an intent to limit its application clearly appears."

■ Here, § 18–3–203(1)(f), C.R.S.1973 (1978 Repl.Vol. 8) provides a culpable mental state of knowingly with respect to the element of "knows or reasonably should know that the victim is a peace officer." Consequently, under the principles of statutory interpretation discussed above, the mental state of knowingly also applies to the element of violently applying physical force.

■ Since defendant did not object to this instruction at the time it was given, reversal on this ground would not be appropriate unless plain error occurred. *People v. Frysig,* 628 P.2d 1004 (Colo.1981). Although the instructions given by the court did not specifically apply the mental state of knowingly to the element of violently applying physical force, the court did define the mental state of knowingly in a subsequent instruction. The instructions were couched in the statutory language and, read as a whole, adequately informed the jury that a culpable mental state was required before defendant could be convicted of this crime. *People v. Mattas,* 44 Colo.App. 139, 618 P.2d 675 (1980), *aff'd,* 645 P.2d 254 (1982). Consequently, we find no error, much less plain error, in the given instructions.

## IV

Defendant last contends that the trial court improperly failed to credit him with time spent in presentence confinement. We disagree.

Defendant here was incarcerated during the period from the assault to the time of trial for other offenses for which he was awaiting trial. He would have been confined for this entire period of time notwithstanding the assault on the deputy sheriff.

Section 16–11–306, C.R.S.1973 (1981 Cum. Supp.) provides:

> "A person who is confined prior to the imposition of sentence is entitled to credit against the term of his sentence for the entire period of such confinement ...."

Section 16–11–306, C.R.S.1973 (1978 Repl. Vol. 8), the statute in effect prior to this amendment, allowed the court discretion in deciding whether to give defendant credit for presentence confinement, "which defendant has undergone with respect to the transaction for which he is to be sentenced."

The amended version of the statute does not provide that the confinement must be with respect to the transaction for which the defendant is to be sentenced. However, such an interpretation is mandated by the otherwise incongruous and duplicative result which would occur if the amended version of the statute is construed to apply to any confinement. *See People v. Loggins,* 628 P.2d 111 (Colo.1981). For example, as the trial court stated, if a defendant currently serving a 20-year sentence in the penitentiary assaults a guard and four months later is found guilty of that offense, that defendant would still have been confined in the penitentiary for the entire period of time even if the assault had not occurred. Hence, to give such a defendant credit for the four month confinement between the assault and the conviction would in effect truncate the sentence imposed for the assault, a result which could not have been intended by the General Assembly.

Hence, although the recent amendment to the statute does not expressly provide that confinement must be as a result of the same transaction for which defendant is to be sentenced, we rule that such requirement remains as an implicit provision of the statute. Accordingly, defendant is not entitled to credit for any presentence confinement incurred as a result of other offenses unrelated to the one at issue.

Judgment affirmed.

ENOCH, C.J., and VAN CISE, J., concur.