19CA1573 Peo v Kraaz 10-07-2021 COLORADO COURT OF APPEALS Court of Appeals No. 19CA1573 City and County of Denver District Court No. 18CR4171 Honorable Michael J. Vallejos, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Jaymi L. Kraaz, Defendant-Appellant. JUDGMENT REVERSED AND CASE REMANDED WITH DIRECTIONS Division II Opinion by JUDGE BERGER Román and Yun, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced October 7, 2021 Philip J. Weiser, Attorney General, Carmen Moraleda, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Joseph T. Goodner, Alternate Defense Counsel, Englewood, Colorado for Defendant-Appellant 
1 ¶ 1 Jaymi L. Kraaz, defendant, appeals her convictions for first and second degree aggravated motor vehicle theft. We reject her challenge to the sufficiency of the evidence. But we agree that the prosecutor committed misconduct during voir dire by indoctrinating jurors with the prosecution’s theory of the case and also by obtaining commitments for a guilty verdict. On plain error review, we conclude that the misconduct casts serious doubt on the reliability of Kraaz’s convictions, so we reverse and remand for a new trial. I. Relevant Facts and Procedural History ¶ 2 The prosecution’s evidence allowed the jury to find the following facts. Kraaz rented a car through “Fluid Market,” a car-sharing application, from May 7, 2018, through May 11, 2018. Using the app, Kraaz created an account, uploaded her driver’s license, and selected a car. Kraaz agreed to Fluid Market’s terms and conditions, which forbade anyone except her from driving the car and warned that she could be criminally prosecuted if she did not return the car on time. Kraaz never returned the car. ¶ 3 Fluid Market’s account manager waited until May 13, 2018, to contact Kraaz about the car because the company “usually wait[s] 
2 48 hours for them to get back.” The court admitted the following text message conversation between Kraaz and the account manager: [Account manager]: this is Liz from fluid I need you to return my Toyota ASAP I am going to report it stolen if I don’t hear from you in the next hour [Kraaz]: Liz I apologize . . . I have been camping without my phone. Trying to extend on the app. & pay the late fee. [Account manager]: Send me a picture of the pickup and drop-off fuel in mileage and the reservation and start a new one Or when can you return it Let me know when you are planning on returning the car asap [Kraaz]: We leaving Gunnison. Will return by noon tomorrow. Will start a new reservation. When on wifi. Gonna stop soon. The account manager texted Kraaz over the next two days, demanding that she return the car and threatening to report it stolen. Kraaz did not respond until May 16, 2018: [Kraaz]: I am so sorry. I will be touch [sic] soon & pay whatever amount needed . . . i have had some unforeseen tragedies take place the past couple days . . . i promise i am not trying to get over on you at all im [sic] trying to get it returned asap[.] 
3 Later that day, Kraaz texted the account manager that someone else had the car. The manager responded, “[h]e just called us and said you have the car. We need it back asap. You rented the car and everything is under your name.” Kraaz texted back, denying that she had the car or that she ever had the car. Kraaz and the account manager continued texting about the car for a few days. Then Kraaz stopped responding. ¶ 4 Fluid Market’s owner filed a police report for theft of the vehicle. Eventually, the car was found in Minnesota. ¶ 5 The prosecution charged Kraaz with first and second degree aggravated motor vehicle theft. See § 18-4-409(2)(a), (4), C.R.S. 2020. At trial, Kraaz’s defense was that someone stole the car from her (either the man who called the account manager or his friend). The jury convicted Kraaz on both counts. II. Sufficiency of the Evidence ¶ 6 Kraaz first contends that insufficient evidence supports her convictions. We address this argument because a reversal due to insufficient evidence “may preclude retrial” on double jeopardy grounds. People v. Coahran, 2019 COA 6, ¶ 40 (quoting People v. Marciano, 2014 COA 92M-2, ¶ 42). 
4 A. Law ¶ 7 We review the sufficiency of the evidence de novo “to determine whether the evidence before the jury was sufficient both in quantity and quality to sustain the defendant’s conviction.” Clark v. People, 232 P.3d 1287, 1291 (Colo. 2010). ¶ 8 Our inquiry is whether the direct and circumstantial evidence, when viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable fact finder that Kraaz is guilty beyond a reasonable doubt. Id. “We do not sit as a thirteenth juror to determine the weight of the evidence presented to the jury.” Id. at 1293. Instead, “it is for the fact finder to determine the difficult questions of witness credibility and the weight to be given to conflicting items of evidence.” People v. Kessler, 2018 COA 60, ¶ 12. ¶ 9 “[I]f there is evidence upon which one may reasonably infer an element of the crime, the evidence is sufficient to sustain that element.” Id. (citation omitted). Additionally, “an actor’s state of mind is normally not subject to direct proof and must be inferred from his or her actions and the circumstances surrounding the occurrence.” Id. 
5 B. Application ¶ 10 A person commits aggravated motor vehicle theft in the second degree if she “knowingly obtains or exercises control over the motor vehicle of another without authorization.” § 18-4-409(2), (4). As pertinent here, aggravated motor vehicle theft in the first degree requires the prosecution to prove the additional element that the defendant “[r]etain[ed] possession or control of the motor vehicle for more than twenty-four hours.” § 18-4-409(2)(a). ¶ 11 Kraaz argues that there is no evidence that she knowingly exercised unauthorized possession or control of the car for a twenty-four-hour period. Specifically, she argues that May 14 is the earliest her possession could have been unauthorized, based on the account manager’s testimony that she usually waited forty-eight hours before inquiring about missing vehicles. Even accepting Kraaz’s doubtful premise that she had authority to use the car through May 13, we reject her sufficiency argument. ¶ 12 A photo of Kraaz’s driver’s license was uploaded to her Fluid Market profile. Her phone number was listed in the profile. Fluid Market’s owner testified that Kraaz rented the car through the app on May 7. The vehicle was due back on May 11. 
6 ¶ 13 On May 13, Kraaz had not returned the car. The account manager texted Kraaz that day, demanding that she return the car. Kraaz texted back that she was sorry and that she “will return by noon tomorrow.” A reasonable juror could infer that Kraaz had the car at this point. ¶ 14 Three days later, on May 16, Kraaz again apologized and said she is “trying to get it returned asap.” After Kraaz brought up the possibility that someone else had the car, the manager texted her, “he just called us and said you have the car. We need it back asap. You rented the car and everything is under your name.”
1 (Emphasis added.) A reasonable fact finder could infer from Kraaz’s texts, the manager’s texts, and the alternate suspect’s statement, that Kraaz still had possession of the car on May 16. ¶ 15 Therefore, a reasonable jury could have concluded that Kraaz knowingly exercised unauthorized possession or control of the car. 1 Kraaz does not argue on appeal that any of the text messages or statements in the text messages were hearsay or otherwise inadmissible. Even if she had, we would still consider the text messages in our review of the sufficiency of the evidence. We consider all evidence before the jury, properly or improperly admitted, when determining whether the evidence was sufficient to support the convictions. People v. Marciano, 2014 COA 92M-2, ¶ 47. 
7 Additionally, a reasonable jury could have concluded that Kraaz knowingly exercised unauthorized possession or control of the car for more than a twenty-four hours (May 14 through May 16). Of course, other conclusions and reasonable inferences are possible, but we may not reweigh the evidence. Clark, 232 P.3d at 1291. Viewing the evidence in the light most favorable to the prosecution, the evidence was sufficient for a reasonable jury to find the elements of first and second degree motor vehicle theft beyond a reasonable doubt. III. Prosecutorial Misconduct During Voir Dire ¶ 16 Kraaz next contends that prosecutorial misconduct during or related to voir dire deprived her of a fair trial. Specifically, she contends that the prosecutor used voir dire to • indoctrinate the jury to the prosecution’s theory of the case; • commit the jury to a guilty verdict; and • misrepresent the law. She also contends that the prosecutor committed misconduct during rebuttal closing argument by telling the jurors to honor their commitments to return a guilty verdict. 
8 ¶ 17 With the exception of Kraaz’s argument that the prosecutor misrepresented the law,
2 these arguments are unpreserved. A. Standards of Review and Reversal ¶ 18 The scope of voir dire is within the discretion of the trial court. People v. Saiz, 660 P.2d 2, 4 (Colo. App. 1982). “The propriety of questions to potential jurors on voir dire is within the discretion of the trial court.” People v. Collins, 730 P.2d 293, 300 (Colo. 1986). ¶ 19 We engage in a two-step analysis when reviewing claims of prosecutorial misconduct. Wend v. People, 235 P.3d 1089, 1096 (Colo. 2010). First, we determine whether the prosecutor’s conduct was improper based on the totality of the circumstances. Id. Second, we decide whether the misconduct warrants reversal under the applicable standard. Id. 2 We reject the Attorney General’s contention that Kraaz did not preserve the argument that the prosecutor misrepresented the law during voir dire. Defense counsel objected during the prosecution’s voir dire hypothetical, stating, “I believe there’s some confusion and misstatement of the law. Could the Court educate the jury as to the mens rea elements?” The court overruled the objection. “We do not require that parties use ‘talismanic language’ to preserve particular arguments for appeal.” People v. Melendez, 102 P.3d 315, 322 (Colo. 2004). The trial court need only be “presented with an adequate opportunity to make findings of fact and conclusions of law on any issue” before it. Id. That occurred here. 
9 ¶ 20 The standard of reversal for preserved claims of prosecutorial misconduct is harmless error. People v. Rhea, 2014 COA 60, ¶ 42. ¶ 21 Unpreserved claims are forfeited. People v. Rediger, 2018 CO 32, ¶ 40. We review forfeited claims for plain error. Id.; see Crim. P. 52(b). “[P]lain error review depends on the particular facts and context of the given case, because only through an examination of the totality of the circumstances can the appellate court deduce whether error affected the fundamental fairness of the trial.” Wend, 235 P.3d at 1098. ¶ 22 “To constitute plain error, any prosecutorial misconduct ‘must be flagrant or glaring or tremendously improper.’” People v. Bowers, 2021 COA 41, ¶ 54 (quoting People v. Weinreich, 98 P.3d 920, 924 (Colo. App. 2004)); see also Domingo-Gomez v. People, 125 P.3d 1043, 1053 (Colo. 2005). Reversal is only warranted if the misconduct “so undermine[d] the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction.’” Bowers, ¶ 54 (quoting Weinreich, 98 P.3d at 924). “Factors to consider include the language used, the context in which the statements were made, and the strength of the evidence supporting the conviction.” Domingo-Gomez, 125 P.3d at 1053. 
10 ¶ 23 Unlike forfeiture, “waiver extinguishes error, and therefore appellate review.” Rediger, ¶ 40. The Attorney General argues that Kraaz waived her first argument (that the prosecution used voir dire to educate the jury about its theory of the case) by not objecting. ¶ 24 We disagree. Waiver is “the intentional relinquishment of a known right or privilege.” Id. at ¶ 39 (citation omitted) (emphasis in original). The Attorney General does not cite any evidence that Kraaz intended to waive her argument. Instead, we conclude that Kraaz’s lack of objection to any of the extensive voir dire dialogue was “the failure to make the timely assertion of a right,” which constitutes forfeiture. Id. The Attorney General cites People v. Shipman, 747 P.2d 1, 3 (Colo. App. 1987), in support of the waiver argument, but that court of appeals case predates, and is inconsistent with, the supreme court’s decision in Rediger. ¶ 25 The Attorney General also cites Crim. P. 24(b)(2) in support of its waiver argument, but that rule is inapplicable. Crim. P. 24(b)(2) states, “[a]ll matters pertaining to the qualifications and competency of the prospective jurors shall be deemed waived by the parties if not raised prior to the swearing in of the jury to try the case.” (Emphasis added.) Kraaz does not argue that the jurors were 
11 unqualified or incompetent. See § 13-71-105, C.R.S. 2020 (detailing juror qualifications). Instead, she argues that the prosecutor committed reversible misconduct. Crim. P. 24(b)(2) is therefore inapposite. Kraaz’s claim was not waived. B. Additional Facts ¶ 26 The court gave each side thirty minutes to conduct voir dire. The prosecutor spent her allotted time almost entirely on a hypothetical involving a library patron with an overdue book.
3 The following lengthy colloquy is a sample of the prosecutor’s voir dire: [Prosecutor]: imagine [your sister] did work for a public library. [Library patron] comes in. She checks out a book. It’s a rare book, but your sister knows her very well. . . . She checks that book out for about two weeks, and two weeks come and go, and [library patron] hasn’t returned the book. Your sister calls her, leaves her a voicemail. She calls her. She doesn’t answer. She leaves a voicemail and says please return my book. She does that for three straight days. Never gets an answer. At that point, in your opinion, has she stolen the book from the library? 3 The prosecutor began voir dire with one unrelated question (Who is “excited to do jury service?”), received two answers, and then used the rest of her time to question the jurors about the overdue-library-book hypothetical. 
12 [Prospective Juror]: I’d like to think she hasn’t and misplaced it; but probably, technically, yes. [Prosecutor]: She’s not responding. That’s all you know. It’s past the due date. In your opinion, that would be theft at that point? [Prospective Juror]: Yes. [Prosecutor]: Without more information? [Prospective Juror]: Yes. [Prosecutor]: So let’s say now then that she does call back, and she says I’m so sorry. My dog just died. I’ve been struggling a little bit. Can I bring it back in two days, and your sister says sure. She waits those two days. . . . She didn’t come back. She didn’t bring the book back. At that point, are we for sure that’s theft in your mind? [Prospective Juror]: Technically, yes. [Prosecutor]: What about the technical part? Do you feel sorry for her? [Prospective Juror]: Of course I feel sorry for her. All of these other things are happening in her world, but she’s had some warnings. [Prosecutor]: So let’s just say [library patron] was sitting over here, that she was charged with theft. That was the scenario. Could you find her guilty of theft? [Prospective Juror]: Technically, yes. [Prosecutor]: Would you feel sympathetic towards her given what’s happened with her 
13 dog? Maybe there’s some other personal things going on that you don’t know about. Would you then kind of feel bad about finding her guilty? [Prospective Juror]: Yes. [Prosecutor]: Would you to the point of finding her not guilty because of her situation with the dog? [Prospective Juror]: No. (Emphasis added.) ¶ 27 Later, while questioning a different prospective juror, the prosecutor expanded the hypothetical: [Prosecutor]: So let’s say she does call back, and this is a week later after the due date and says actually my — I lent the book to my husband. Actually, now we’re getting divorced. I’ve been trying to get the book back, but he just won’t give it to me. Can I get one more week to try to get the book back? Her sister says sure. That week comes and goes. She still doesn’t have the book. Is she technically guilty of theft? [Prospective Juror]: Yes. [Prosecutor]: Could you find her guilty of theft? [Prospective Juror]: Yes. [Prosecutor]: Are you going to feel sorry for her? [Prospective Juror]: No. 
14 . . . . [Prosecutor]: Let’s just say that [library patron’s] sister leaves a voicemail and says if you don’t return the book, I’m actually going to file a police report, and that’s when [library patron] actually responds. Does that change your opinion of whether she’s guilty of theft or not? [Prospective Juror]: Not necessarily, because she still could be guilty of stealing it, and she’s only responding because of the threat. The prosecutor also asked the prospective jurors how they would feel if there was a grace period for returning library books before they were overdue, and if they would find the library patron guilty of theft if she did not return the book before the grace period expired. ¶ 28 Later, when one prospective juror indicated that he would find the library patron guilty of theft, the prosecutor asked all of the prospective jurors, “Who agrees with [prospective juror B]? . . . Who agrees with him on that? [Prospective juror W], you didn’t raise your hand. . . . Why not?” The prosecutor questioned prospective juror W about why she did not think the library patron was guilty, until finally the prospective juror conceded that certain facts made it “more likely [that] she would be guilty.” 
15 ¶ 29 After hearing the prosecutor question ten prospective jurors about the overdue library book, another prospective juror offered this opinion: [Prospective Juror]: The person that checked out the book is the one that engaged in the contract. So the book is then their responsibility. So the question is if she gave the book to her husband who then sold it, it’s still her responsibility. If the husband stole the book and then sold it, then she can file a police report against her husband. [Prosecutor]: I like your opinions. [Prospective Juror]: Thank you. [Prosecutor]: [Prospective juror], let’s just say that her husband actually does steal it from her. She was taken advantage of in this pending divorce, but she doesn't file a police report. [Prospective Juror]: Then she’s guilty. (Emphasis added.) ¶ 30 In total, the prosecutor questioned at least twenty-one prospective jurors about the overdue library book. When a prospective juror doubted that the library patron was guilty, the prosecutor pushed back (“Why are you hesitating?”), asked additional questions (“In theory, they both could be liable in your mind?”), or made changes to the hypothetical until the prospective 
16 juror agreed that the library patron was guilty. The prosecutor elicited confirmation from the prospective jurors that the library patron was guilty of theft, or that they would find someone like her guilty of theft if they were presented with similar facts. ¶ 31 Of the prospective jurors questioned about the library hypothetical, at least ten were on the jury that convicted Kraaz. And each of those jurors expressed some degree of agreement with the prosecutor that the library patron was guilty. ¶ 32 Inexplicably, Kraaz’s counsel did not object to any of this, save one contention that the prosecutor’s hypothetical misrepresented the law (see supra note 2). ¶ 33 Then, in rebuttal closing argument, the prosecutor argued, [T]hink back to voir dire when we were talking about that book, and how [library patron] and her husband took the book from her, or she lent it to him. Yes. At the end of the day, it was [library patron] who checked out the book, who agreed to return it, who did not return it. That is absolutely the case here. Ms. Kraaz rented the car here, picked it up, didn’t return it. As soon as she sends the text message of [“]I’m up in Gunnison[”], and [“]I’m camping,[”] she’s committed the crime. (Emphasis added.) Again, Kraaz’s counsel did not object. 
17 C. Law of Voir Dire ¶ 34 “To receive a fair trial, the defendant must be tried by an impartial jury.” People v. Wilson, 2013 COA 75, ¶ 12. The purpose of voir dire, therefore, is “to allow counsel ‘to determine whether any potential jurors possessed any beliefs that would bias them such as to prevent [the defendant] from receiving a fair trial.’” Id. (quoting People v. Rodriguez, 914 P.2d 230, 255 (Colo. 1996)). This is voir dire’s “only proper purpose.” Shipman, 747 P.2d at 3. ¶ 35 “Counsel may not use voir dire for the purpose of instructing or educating the jury.” Id. “Voir dire may not be used to instruct the jury regarding the law” or a party’s theory of the case. People v. Lybarger, 790 P.2d 855, 859 (Colo. App. 1989), rev’d on other grounds, 807 P.2d 570 (Colo. 1991). ¶ 36 The supreme court employed these principles in Edwards v. People, 160 Colo. 395, 418 P.2d 174 (1966). In that case, the defendant was charged with second degree murder for shooting a boarder in his home. Id. at 397-99, 418 P.2d at 175-76. The defendant wanted to ask prospective jurors, “[i]f it should appear that the wife of the defendant in this case and the deceased were unduly intimate, could you and would you, notwithstanding that 
18 fact, return a verdict based wholly and solely upon the evidence and instructions of the court?” Id. at 401, 418 P.2d at 177. The trial court disallowed the question. Id. The supreme court agreed that the tendered question was improper, reasoning, “[i]t is not the purpose of voir dire examination by counsel to educate the prospective panel of jurors to a particular theory of the case.” Id. at 402, 418 P.2d at 177. ¶ 37 A division of this court extrapolated on these points: The impression is inescapable that the aim of counsel is no longer exclusion of unfit or partial or biased jurors. It has become the selection of a jury as favorable to the party’s point of view as indoctrination through the medium of questions on assumed facts and rules of law . . . . . . . . Under the guise of eliciting information they attempt to impart to the jurors a conception of the law highly favorable to one side of the case. Saiz, 660 P.2d at 4 (quoting State v. Manley, 255 A.2d 193, 204 n.2 (N.J. 1969)) (emphasis added). The Saiz division concluded that the trial court was well within its discretion to exclude these types of questions. Id. 
19 D. The Prosecution’s Conduct Was Improper ¶ 38 The overdue-library-book hypothetical was obviously constructed to teach the jury the prosecution’s theory of the case. There are no other reasonable conclusions to be drawn. The facts of the hypothetical closely mirrored the facts pertinent to Kraaz’s case, including minute details like a third party stealing the borrowed item, threats of filing a police report, and a grace period. The prosecutor repeatedly pushed back against prospective jurors who did not think the library patron was guilty, while also encouraging and agreeing with prospective jurors who said she was guilty. This imparted to the jurors the prosecutor’s belief that the library patron was guilty, and, therefore, that they should find Kraaz guilty in an analogous situation. ¶ 39 The Attorney General does not appear to dispute any of this. Instead, the Attorney General argues that the prosecutor’s conduct did not rise to the level of plain error because her questions were not obviously contrary to established Colorado law. We reject this argument. A bedrock principle of voir dire is that it may not be used to teach the jury a party’s theory of the case. Edwards, 160 Colo. at 402, 418 P.2d at 177; Lybarger, 790 P.2d at 859; Shipman, 
20 747 P.2d at 3; Saiz, 660 P.2d at 4. The prosecutor’s conduct was a flagrant violation of this principle. ¶ 40 But the prosecutor’s misconduct went further. She did not merely teach her theory of the case: she also obtained commitments from prospective jurors to find the library patron guilty. The prosecutor got every prospective juror with whom she spoke to agree that the library patron was guilty of theft, and, in some cases, that they would find someone guilty of theft if presented with similar facts. ¶ 41 The Attorney General argues that any error was not plain because no Colorado case has disapproved of questions seeking to pre-commit jurors to a guilty verdict. See United States v. Johnson, 366 F. Supp. 2d 822, 842 (N.D. Iowa 2005) (referring to these types of questions as “stake-out” questions). But a juror’s commitment to convict is not distinct from the voir dire prohibitions established in Colorado law. Rather, pre-commitment is a flagrant example of Colorado’s longstanding prohibition: a party may not use voir dire to teach the jury its theory of the case. Here, more than merely teaching her theory of the case, the prosecutor obtained each prospective juror’s agreement with that theory. Accordingly, we 
21 reject the Attorney General’s argument that the error was not plain due to a lack of binding case law regarding pre-commitments. ¶ 42 The Attorney General also argues that asking for pre-commitment to a guilty verdict was not error because the hypothetical did not involve auto theft. We reject this argument. As discussed, the prosecutor’s hypothetical mirrored the relevant facts of Kraaz’s case down to granular details. The only difference the Attorney General identifies is that the hypothetical involved a book, not a car. Indeed, despite this lone difference, the prosecutor explicitly argued the similarities between Kraaz’s case and the hypothetical during rebuttal, stating that the library hypothetical “is this case.” ¶ 43 In sum, the prosecution’s voir dire questions led the jury to agree with the prosecution’s theory of the case before any evidence had been presented. Viewing the prosecutor’s statements in context and under the totality of the circumstances, we conclude that this misconduct was flagrant, glaring, and tremendously improper. Domingo-Gomez, 125 P.3d at 1053. 
22 E. Reversal is Required ¶ 44 The improper hypothetical and the pre-commitment questions were essentially the first and last statements the jury heard from the prosecutor. Before presenting any evidence, for almost thirty minutes, the prosecutor taught her theory of the case and elicited agreement with it from at least ten of the jurors who convicted Kraaz. ¶ 45 Then, the prosecutor reminded the jury about all of this during rebuttal closing. Specifically, the prosecutor asked the jury to remember their voir dire discussions and the library book hypothetical. The prosecutor then said, “That is absolutely the case here. Ms. Kraaz rented the car here, picked it up, didn’t return it. As soon as she sends the text message of [‘]I’m up in Gunnison,[’] and [‘]I’m camping,[’] she’s committed the crime.” (Emphasis added.) ¶ 46 With this statement, the prosecutor not only reinforced the hypothetical — she misrepresented the law. Telling jurors that Kraaz “committed the crime” when she sent the message ignores that the jury had to find beyond a reasonable doubt that Kraaz “knowingly obtain[ed] or exercise[d] control over the motor vehicle of 
23 another without authorization.” § 18-4-409(2). Worse, this element of the crime was central to the dispute in this case, as discussed below. Although the jury was later correctly instructed on the law before deliberations, the prosecutor still used its last word to misrepresent the law. ¶ 47 Referencing the improper hypothetical and the jurors’ pre-commitments and misrepresenting the law are prototypes of unfair prejudice. “Rebuttal closing is the last thing a juror hears from counsel before deliberating, and it is therefore foremost in their thoughts.” Domingo-Gomez, 125 P.3d at 1052. ¶ 48 We must also analyze the impact of prosecutorial misconduct in light of “the strength of the evidence supporting the conviction.” Id. at 1053. The evidence against Kraaz was not overwhelming. ¶ 49 The prosecution’s case was essentially that Kraaz rented a car but did not return it. But, as discussed above, the prosecution had to prove beyond a reasonable doubt that Kraaz knowingly exercised control over the car. See § 18-4-409(2). The text messages are the only evidence that Kraaz, as opposed to some other person, exercised control over the car after her authorization to do so had 
24 ended. Kraaz texted that she was in Gunnison, that she was sorry, and that she was trying to return the car. ¶ 50 The text message conversation also included a self-serving hearsay statement from an alternate suspect that Kraaz had the car. While a reasonable jury could infer that Kraaz was exercising control over the vehicle when those texts were sent (see supra Part II.B), this evidence is by no means dispositive. ¶ 51 The relative weakness of the prosecution’s case supports our conclusion that the prosecutorial misconduct casts serious doubt on the reliability of the convictions. IV. Remaining Contentions ¶ 52 Given our disposition, we need not and do not address Kraaz’s remaining contentions.
4 4 We note that the prosecutor argued in closing, “This isn’t about an ax to grind, about getting convictions. It’s about whether someone stole a car or not, and whether you want to live in a society where someone takes a car, doesn’t return it, and they are not held accountable.” (Emphasis added.) Kraaz objected below and raises this issue on appeal. The prosecutor’s argument violated the principle that prosecutors “may not urge jurors to convict a criminal defendant in order to protect community values, preserve civil order, or deter future lawbreaking.” People v. Ortega, 2015 COA 38, ¶ 54 (citation omitted); see also People v. Marko, 2015 COA 139, ¶ 221, aff’d on other grounds, 2018 CO 97. 
25 V. Disposition ¶ 53 The judgment of conviction is reversed. The case is remanded for a new trial. JUDGE ROMÁN and JUDGE YUN concur. Such arguments must be excluded on retrial.